THE STATE EX REL. RUSCILLI CONSTRUCTION CO., INC., APPELLEE, *v.*

INDUSTRIAL COMMISSION OF OHIO, APPELLEE; BARNO, APPELLANT.

[Cite as *State ex rel. Ruscilli Constr. Co., Inc. v. Indus. Comm.,*

132 Ohio St.3d 18, 2012-Ohio-1588.]

*Workers' compensation—Court of appeals correctly concluded decision could not be upheld when order was premised on mistakes of fact and law—Court of appeals' judgment affirmed.*

(No. 2010-1614—Submitted February 7, 2012—Decided April 12, 2012.)

APPEAL from the Court of Appeals for Franklin County,

No. 09AP-1006, 2010-Ohio-4126.

_____

**Per Curiam**.

{¶ 1} Appellant, David D. Barno, has alleged that he was injured as a result of appellee Ruscilli Construction Company, Inc.'s violation of a specific safety requirement ("VSSR") pertaining to floor openings on construction sites. His application for additional workers' compensation benefits for that alleged violation is now at issue.

{¶ 2} Barno was hired as a laborer by Skilled Trades Industrial Maintenance, an employment agency that assigns temporary workers to construction projects. In September 2007, he was assigned to a building-renovation project overseen by Ruscilli.

{¶ 3} Workers familiar with the site knew that the first floor had numerous openings in the concrete that presumably went down to a basement or sub-basement. Barno, however, was new to the project. Three days into his assignment, he was told to remove pieces of wood that had been left on the floor by the night crew. One of those pieces was a 3-foot square, ¾-inch-thick

plywood board. Barno stooped down to grab it, not knowing that a 15-foot-deep hole lay beneath. He lost his balance while lifting the board and fell into the hole, sustaining massive face and head injuries as a result.

{¶ 4} After a workers' compensation claim was allowed, Barno filed an application for additional compensation[1] with appellee Industrial Commission of Ohio, alleging a violation of Ohio Adm.Code 4123:1-3-04(D):

> (1) Floor openings
>
> Floor openings shall be guarded by a standard guard railing and toeboard or a cover with a safety factor of no less than two and so constructed that the cover cannot be accidentally displaced. A safety belt or harness with a lanyard may be provided in lieu of a standard guard railing and toeboard or cover.

{¶ 5} In proceedings before a commission staff hearing officer ("SHO"), two Ruscilli employees described the safety measures that the company had used to protect workers from the hazards presented by the building's floor openings. Foreman Jeremy Crawford and corporate safety officer Deborah Webb stated that openings were typically covered with a ¾-inch plywood sheet. Generally, holes were covered with a single sheet of plywood, but two sheets were sometimes used in areas with motorized-equipment traffic.

{¶ 6} These plywood sheets, whether single or double, were secured to the floor in each corner by "Hilti pins." These "pins" were actually special nails that could be shot through wood and into concrete by a powerful nail gun. Once fastened, it was standard practice to kick the sheet on two of the sides to ensure

---

1. Barno filed his application against both Skilled Trades and Ruscilli (as the situs employer), which is permissible under *State ex rel. Newman v. Indus. Comm.*, 77 Ohio St.3d 271, 673 N.E.2d 1301 (1997). Barno apparently settled his claim with Skilled Trades, making Ruscilli the sole employer involved in this VSSR action.

that it did not slide or otherwise dislodge. A properly secured board, according to Webb, took considerable effort to remove, and even deliberate attempts to lift it involved exertion.

**{¶ 7}** Crawford testified that the area where Barno was hurt was off limits to motorized equipment, meaning that all floor openings were covered by a single sheet of plywood. He stated that this particular board originally had the word "hole" painted on it in bold bright letters. He conceded, however, that on the date of injury, the board was dirty and the letters might have been unreadable. Crawford could not remember the last time that he had kick-tested that particular board prior to the accident, but said that there were Hilti pins sticking out of the plywood when he saw it after Barno fell.

**{¶ 8}** Barno's testimony contradicted the testimony of Ruscilli's witnesses. Barno indicated that the hole was covered by two stacked pieces of plywood and that the top one looked brand new. He stated that he removed the first one without effort, dumped it, and returned for the second. He saw no painted warning on the second board, which he claimed lifted without resistance.

**{¶ 9}** The SHO found that Ruscilli had violated Ohio Adm.Code 4123:1-3-04(D)(1):

> The Injured Worker cites O.A.C. 4121:3-04 [*sic,* 4123:1-3-04] (A) and (D)(1), regarding the protection of floors and guarding of openings. The rule applies "* * * to temporary conditions where there is danger of employees or material falling through the floor, roof or wall openings * * *." He specifically cites paragraph (D)(1) which states: "floor openings shall be guarded by a standard guard railing and toeboard or cover. Standard guard railing and toeboard shall be provided on all exposed sides * * *."

Based upon the Injured Worker's testimony, it is found that the hole was only covered with a single piece of plywood that had no indication on or around it that a hole was underneath. The Employer's safety representative presented pictures of a board that had the word "HOLE" written on it in large red letters. She stated that it is the Employer's custom to put two pieces of plywood over every hole, with the top piece having the word "hole" written boldly and clearly on it.

It is found that if two pieces of plywood were over the hole, the Injured Worker would not have fallen through, since he only lifted one piece. Further, whether or not the word "hole" was written on the plywood, it did not serve to deter the Injured Worker from picking it up. The picture that the Employer submits at hearing (exhibit A) contains the word "hole" on it, but it is not clearly visible because of the many shoes, boots, and equipment pieces that have partially obscured the word.

The Employer further stated that the two pieces of plywood were nailed in place with two-inch nails. Again, this is not found to be an effective way of guarding the hole. Each board was approximately ⅝" deep, which means that two of them would take up 1¼" of a 2" nail. Approximately ¾" of the nail was left to secure the boards to the ground. Considering that the ground was merely compacted dirt that could shift because of the hole adjacent to it, or that a rainy day could cause the cover to be less secure than usual, it is found that the plywood cover of a hole that was big enough for a man to fall through was ineffective. It is noted that the picture of a plywood board * * * does not have any holes at the corners where nails were once used to secure it.

{¶ 10} Ruscilli unsuccessfully sought reconsideration, claiming that the SHO's order was based on several obvious mistakes of fact. Ruscilli then filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission had abused its discretion in finding a VSSR. The court found that the order misinterpreted the applicable safety requirement and that it was based on significant mistakes of fact. It vacated the order and returned the cause to the commission for further consideration and an amended order.

{¶ 11} This cause is now before this court on Barno's appeal as a matter of right.

{¶ 12} The court of appeals concluded that the SHO's order was premised on two significant mistakes of fact. We find that the SHO's order contains at least four major errors involving both law and fact. The result is a narrative that has no basis in fact and an analysis premised on findings that lack evidentiary support. The court of appeals correctly concluded that the decision cannot be upheld.

{¶ 13} The most glaring error is a legal one. According to the SHO, Ohio Adm. Code 4123:1-3-04(D)(1) provides that "floor openings shall be guarded by a standard guard railing and toeboard or cover. Standard guard railing and toeboard shall be provided on all exposed sides * * *." That is not, however, what the provision says. Ohio Adm.Code 4123:1-3-04(D)(1) actually reads:

> Floor openings shall be guarded by a standard guard railing and toeboard or a cover with a safety factor of no less than two and so constructed that the cover cannot be accidentally displaced. A safety belt or harness with a lanyard may be provided in lieu of a standard guard railing and toeboard or cover.

**{¶ 14}** This error is critical, because the key question in this case is whether the plywood in question could be accidentally displaced. The SHO's version of the specific safety regulation does not even recognize the ease of displacement as part of the regulation.

**{¶ 15}** The remaining errors are factual and involve almost every fact that is material. These errors, in turn, fatally distort the SHO's analysis. She, for example, concluded that Ruscilli's safety measures were inadequate because they did not take into consideration the unstable nature of the building's dirt floor. The building, however, did not have a dirt floor; it was solid concrete.

**{¶ 16}** The SHO also stated that according to Barno, the hole was covered by a single piece of plywood. She criticized Ruscilli for failing to follow its customary practice of covering holes with two sheets of plywood and concluded that the accident would not have occurred if Ruscilli had done so. These statements, however, are all untrue. Ruscilli's usual practice was to cover holes with one piece of plywood, not two, so the purported deviation from custom that the SHO decried did not occur. Barno, moreover, consistently stated that the hole *was* covered by two plywood sheets. This invalidates the SHO's assertion that if two boards had been used, the accident would have been prevented.

**{¶ 17}** The judgment of the court of appeals is affirmed.

Judgment affirmed.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Wiles, Boyle, Burkholder & Bringardner Co., L.P.A., and J. Miles Gibson, for appellee Ruscilli Construction Company, Inc.

Heinzerling Law Office and Mark Heinzerling, for appellant.

_____